## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM AGUILAR, as administrator of the estate of Erik Aguilar, <br><br> Plaintiff, <br><br> v. <br><br> PAUL HODSON, ANTONIO ALMEIDA, DAMIEN VASCONCELOS, ROBERTO DACUNHA and JOHN MARTINS, in their individual capacities, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 12-11822 |

## **COMPLAINT**

## INTRODUCTION

1.       This is a civil rights and wrongful death action. In the early morning hours of July 22, 2010, Erik Aguilar went into a convenience store in New Bedford seeking help. The store clerk called the police to assist him. Defendant Paul Hodson, a New Bedford police officer, arrived at the store, spoke with Erik Aguilar, then tried to handcuff him. Mr. Aguilar was not cooperative during the handcuffing. Defendant Hodson took him to the ground, sprayed him in the face with pepper spray, handcuffed him with his hands behind his back, and then left him lying face down on the pavement.

2.       Mr. Aguilar struggled to breathe because he was face down with his hands cuffed behind him. To stop him from moving Defendant Hodson applied pressure pinning him to the pavement, making it harder for Mr. Aguilar to breathe. Defendant Hodson, soon joined by the other Defendants, all New Bedford police officers, left Mr. Aguilar lying face down until his heart stopped beating. They did not put Mr. Aguilar in a sitting position which they knew was necessary to prevent positional asphyxia particularly in a person who had been sprayed with pepper spray. Defendants

ignored Mr. Aguilar's serious medical needs. Store surveillance video shows them casually standing around.  They did not call for medical care until they learned Mr. Aguilar had no pulse. Only then did the police officers sit him up and, eventually, try to revive him. It was too late. Mr. Aguilar died due to Defendants' actions, and inaction.

**JURISDICTION**

3.      This action is brought by the estate of Erik Aguilar pursuant to 42 U.S.C. § 1983 and § 1988 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Title 28 U.S.C. § 1331 and § 1343 provide federal question jurisdiction over all federal claims, and 28 U.S.C. § 1367 provides supplemental jurisdiction over state law claims.

**PARTIES**

4.      William Aguilar is the brother of Erik Aguilar. He was appointed administrator of Erik's estate on April 25, 2012. He brings this case in his capacity as administrator of the estate of Erik Aguilar. At the time of his death, Erik was forty-two years old and a resident of New Bedford, Massachusetts. For simplicity, when "Mr. Aguilar" is used in this complaint, it refers to the decedent, Erik Aguilar.

5.      Defendants Paul Hodson, Antonio Almeida, Damien Vasconcelos, Roberto DaCunha, and John Martins were at all times relevant to this complaint duly appointed police officers in the New Bedford Police Department. Their actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of New Bedford. They are sued in their individual capacities.

**FACTS**

6.      In the early morning hours of July 22, 2010, New Bedford police were called to assist Erik Aguilar. A clerk at the Extra Mart gas station called 911 and reported that Mr. Aguilar was in

the store and that Mr. Aguilar was concerned someone wanted to kill him. The clerk felt Mr. Aguilar needed help.

7.      The call to the police department did not state that Mr. Aguilar had committed a crime or was suspected of committing a crime.

8.      The Extra Mart had surveillance cameras that recorded the interaction between Mr. Aguilar and Defendants, along with other members of the New Bedford Police Department.

9.      Defendant Hodson was the first police officer to arrive. Mr. Aguilar started speaking to Defendant Hodson while Defendant Hodson was still in his police car.

10.     Eventually, Defendant Hodson got out of his car and spoke with Mr. Aguilar.

11.     After some conversation, Defendant Hodson asked Mr. Aguilar for identification. When Mr. Aguilar did not provide it, Defendant Hodson reached into Mr. Aguilar's pants pocket to get it.

12.     Then Defendant Hodson grabbed Mr. Aguilar's right arm, spun him around, put him on the hood of the police car, and began to handcuff him.

13.     Defendant Hodson pushed Mr. Aguilar against the police car. Mr. Aguilar appeared confused; he was not cooperative. Defendant Hodson brought Mr. Aguilar to the ground. Then he took out a canister of pepper spray and sprayed it on Mr. Aguilar's face.

14.     Defendant Hodson, with assistance from a civilian, handcuffed Mr. Aguilar with his hands behind his back while he lay face down on the pavement. Defendant Hodson applied pressure to Mr. Aguilar's back. In his police report, he admits he was pinning Mr. Aguilar to the pavement.

15.     The civilian, working under Defendant Hodson's supervision, also applied pressure to Mr. Aguilar's back.

3

16.     Once Defendant Hodson took away Mr. Aguilar's liberty, he became responsible for safeguarding his well-being.

17.     New Bedford Police Department General Order #12-02 on use of less lethal force required a police officer who used pepper spray to cleanse the affected area. The order also required that officers not leave a prisoner who was subjected to a chemical spray lying in a prone position during transportation. Officers were instructed to keep the person in an upright position with a clear airway to avoid positional asphyxia.

18.     Defendant Hodson knew from his police training that it was dangerous to leave a person with his hands cuffed behind his back lying face down. He knew the position could restrict the person's breathing.

19.     Defendant Hodson had been trained to move a handcuffed prisoner to a sitting position to avoid possible death from positional asphyxia.

20.     Mr. Aguilar struggled to breathe. He kicked his legs, trying to remove the pressure from Defendant Hodson that prevented him from getting enough air.

21.     Defendant Hodson did not move Mr. Aguilar to a sitting position after handcuffing Mr. Aguilar, nor did he move Mr. Aguilar to a sitting position after Mr. Aguilar's legs stopped moving.

22.     Mr. Aguilar was in desperate need of immediate medical attention.

23.     Defendant Antonio Almeida arrived about two minutes after Mr. Aguilar was handcuffed.

24.     By the time Defendant Almeida arrived on the scene, Mr. Aguilar had stopped moving his feet. Mr. Aguilar did not make any further visible movements.

4

25.     When Defendant Almeida arrived, Defendant Hodson told him that Mr. Aguilar was still resisting by trying to get to his feet. Defendant Hodson continued apply pressure to Mr. Aguilar, pinning him to the pavement.

26.     Defendants Damien Vasconcelos and Roberto DaCunha arrived next, followed by Defendant John Martins.

27.     Defendant DaCunha shined his flashlight on Mr. Aguilar's face several times and spoke to him. Mr. Aguilar never responded coherently. Defendant DaCunha should have realized that at this point Mr. Aguilar was suffering from a serious medical problem and that he required immediate emergency medical care. During this time, Defendant Hodson stood up, removing pressure from Mr. Aguilar's back.

28.     The third time Defendant DaCunha shined his flashlight on Mr. Aguilar's face, Mr. Aguilar was still lying motionless with his hands handcuffed behind his back face down on the pavement.

29.     Shortly after this, Defendants engaged in conversation with each other. They were standing and not paying close attention to Mr. Aguilar. Defendant Hodson leaned towards Defendant Almeida and they exchanged a fist bump.

30.     Mr. Aguilar's breathing became loud and labored. Civilians who were further away from Mr. Aguilar than the Defendant police officers heard this labored breathing.

31.     Based on their training and experience, Defendants should have known that the sound of labored breathing was a sign that Mr. Aguilar needed immediate help to prevent his death.

32.     Defendant police officers failed to move Mr. Aguilar to a sitting position or to take any action in response to the loud breathing sounds.

33.     After Mr. Aguilar had been face-down and handcuffed on the pavement for over nine minutes, and had not moved for almost eight minutes, Defendant Martins finally checked Mr. Aguilar's pulse. Twice, Defendant Martins felt a pulse.

34.     In light of Mr. Aguilar's condition, Defendant Martins should have realized that Mr. Aguilar was experiencing a medical emergency when checked his pulse the first two times. However, Defendant Martins did not report any abnormality either time.

35.     Later, a civilian who was standing further from Mr. Aguilar than the Defendant police officers told the officers that their prisoner had stopped breathing. Still, Defendants did nothing to assist Mr. Aguilar.

36.     Defendants Hodson, Almeida, Vasconcelos, DaCunha, and Martins stood near Mr. Aguilar. They observed Mr. Aguilar lying face down on the pavement with his hands cuffed behind his back. They knew that leaving Mr. Aguilar in this position could cause him to die from asphyxia, yet they did not move him from this position until after his heart had stopped beating.

37.     The third time Defendant Martins checked Mr. Aguilar, Defendant Martins could not detect a pulse.

38.     Defendant Martins informed the other Defendants that he could not detect a pulse.

39.     After Defendant Martins reported that Mr. Aguilar was without a pulse, Defendant Hodson called for an ambulance.

40.     Defendants failed to prevent Mr. Aguilar's death by changing his position, providing CPR, or calling for emergency medical care while he still had a pulse.

41.     One minute after the first call for an ambulance, Defendant Hodson called and asked that the ambulance be expedited. Defendant Hodson said Mr. Aguilar was overdosing, he did not

inform them that Mr. Aguilar had no detectable pulse and had been in that condition for several minutes.

42.      Defendants finally brought Mr. Aguilar to his knees. Mr. Aguilar's body was limp. His heart had stopped beating. He had been face down and handcuffed on the ground for over thirteen minutes.

43.      Some of the Defendants eventually obtained a defibrillator from a police car. When they tried to use it to restart Mr. Aguilar's heart, the machine indicated that no shock was advised. The defibrillator would not provide a shock because Mr. Aguilar's heart had no organized electrical activity—in common language, he had flatlined.

44.      As trained first responders, Defendants knew once Mr. Aguilar had no pulse he was experiencing a medical emergency. They knew that CPR should begin immediately when a person's heart stops beating. But, Defendants did not begin CPR until four minutes after they requested an ambulance.

45.      While some Defendants went to get the defibrillator, some of the other Defendants should have begun CPR.

46.      By the time they finally began CPR it was too late to help Mr. Aguilar.

47.      About seven minutes after the first call for an ambulance, one of the Defendants called and asked that the medics "step it up."

48.      Defendants could have saved Mr. Aguilar's life by moving him to a sitting position and by promptly providing him with emergency medical attention.

49.      At the scene, Defendant Hodson tried to cover up his misconduct and the misconduct of the other Defendants by providing false statements to emergency medical personnel and to superior officers in the New Bedford Police Department.

50.     Defendant Hodson spoke to the emergency medical technicians ("EMTs"). He told them that Mr. Aguilar had collapsed to the ground. Actually, Defendant Hodson brought Mr. Aguilar to the ground.

51.     Defendant Hodson told the EMTs that he witnessed Mr. Aguilar's cardiac arrest and immediately began CPR. While Defendant Hodson did witness the cardiac arrest, neither he nor the other Defendants promptly provided CPR.

52.     Defendant Hodson also misled the EMTs by failing to provide relevant information. He did not tell the EMTs that he and the other officers had left Mr. Aguilar lying face down with his hands cuffed behind his back. He did not tell the EMTs that he and a civilian had applied pressure to Mr. Aguilar's body. Defendant Hodson did not tell the EMTs that he had used pepper spray on Mr. Aguilar.

53.     Defendant Hodson did not file a use of force report documenting his use of pepper spray. This report is required by the New Bedford Police Department.

54.     Mr. Aguilar died as a result of asphyxia due to police restraint.

55.     Mr. Aguilar endured conscious pain and suffering while he was handcuffed and unable to breathe. He kicked and struggled as he tried to get Defendant Hodson to release the pressure on his body so that he could breathe.

56.     Mr. Aguilar was part of a close-knit family. Mr. Aguilar's next of kin, his parents Rodrigo and Carmenina, lost Mr. Aguilar's care, comfort, society, and companionship forever.

**COUNT I**      **42 U.S.C. § 1983 Claim Against Defendants Hodson, Almeida, Vasconcelos, DaCunha, and Martins: Unreasonable Use of Force**

57.     The above paragraphs are incorporated by reference.

58.     Defendant Hodson handcuffed Mr. Aguilar with his hands behind his back and left him face down on the pavement. When Mr. Aguilar struggled to breathe, Defendant Hodson restrained him, preventing him from breathing.

59.     Defendants Almeida, Vasconcelos, DaCunha, and Martins acted jointly with Defendant Hodson in keeping Mr. Aguilar lying face down on the pavement with his hands cuffed behind him.

60.     Defendants Hodson, Almeida, Vasconcelos, DaCunha, and Martins acting in concert, used unreasonable and excessive force against Mr. Aguilar.

61.     Defendants Hodson, Almeida, Vasconcelos, DaCunha, and Martins deprived Mr. Aguilar of a well-established right to freedom from the use of unreasonable force under the Fourth and Fourteenth Amendments.

62.     Their actions were taken with reckless disregard for Mr. Aguilar's constitutional rights.

63.     As a direct and proximate result of Defendants' actions, Mr. Aguilar and his next of kin suffered the damages described above.

**COUNT II**     **42 U.S.C. § 1983 Claim: Deliberate Indifference to Serious Medical Needs Against Hodson, Almeida, Vasconcelos, DaCunha, and Martins**

64.     The above paragraphs are incorporated by reference.

65.     Mr. Aguilar suffered a serious medical need. He was unable to breathe. Defendant Hodson failed to take simple steps to change Mr. Aguilar's position so that he would be able to draw oxygen into his lungs.

66.     After he was unable to breathe, Mr. Aguilar's heart stopped beating properly. He went into cardiac arrest.

67.     As he was pinning Mr. Aguilar to the pavement, Defendant Hodson knew that Mr. Aguilar was suffering from a serious medical need.

68.     Defendants Almeida, Vasconcelos, DaCunha, and Martins were standing near Mr. Aguilar. They too were aware that the handcuffed prisoner lying on the ground was suffering from a serious medical need.

69.     Defendants Hodson, Almeida, Vasconcelos, DaCunha, and Martins ignored Mr. Aguilar as he lay dying on the pavement.

70.     Defendants Hodson, Almeida, Vasconcelos, DaCunha, and Martins were trained as first responders. They knew how to perform CPR. They did not begin CPR until well after it was too late to help Mr. Aguilar.

71.     As a direct and proximate result of Defendants' actions, Mr. Aguilar and his next of kin suffered the damages described above.

**COUNT III**   **Wrongful Death, M.G.L. ch. 223 § 2 Against Defendants Hodson, Almeida, Vasconcelos, DaCunha, and Martins**

72.     The above paragraphs are incorporated by reference.

73.     Defendants caused Erik Aguilar's death by willful, wanton, or reckless acts.

74.     Mr. Aguilar's next of kin are entitled to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of their son.

**WHEREFORE,** Plaintiff requests that this Court:

1.     Award compensatory damages;

2.     Award punitive damages against Defendants Hodson, Almeida, Vasconcelos, DaCunha, and Martins;

3.     Award the costs of this action, including reasonable attorney's fees; and

10

4.      Award such other further relief as this Court may deem necessary and appropriate.

**JURY DEMAND**

A trial by jury is hereby demanded.

RESPECTFULLY SUBMITTED,
For the Plaintiff,
By his attorneys,

/s/ Howard Friedman
Howard Friedman, BBO #180080
**Law Offices of Howard Friedman PC**
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100
hfriedman@civil-rights-law.com

/s/ David Milton
David Milton, BBO #668908
**Law Offices of Howard Friedman PC**
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100
dmilton@civil-rights-law.com

Dated: October 2, 2012