## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM AGUILAR, as administrator of the estate of Erick Aguilar,<br><br>Plaintiff,<br><br>v.<br><br>PAUL HODSON, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 12-11822-RWZ<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION TO ENFORCE PROTECTIVE ORDER

Plaintiff opposes Defendants' motion to maintain the confidentiality of the New Bedford Police Department's internal investigation of the incident at issue in this lawsuit. Virtually all of the materials that Defendants seek to keep "confidential" are already publicly available. Defendants' motion does not address this existing public access, or the fact that this case is a matter of public concern. Defendants do not cite any authority to support their request for continued confidentiality, and do not identify any harm that will result from disclosure of the complete investigatory file. Because Defendants have not established good cause for continued confidentiality, the Court should deny the motion.

## BACKGROUND

This is a civil rights and wrongful death action against several New Bedford police officers. In the early morning hours of July 22, 2010, Erick Aguilar went into a convenience store in New Bedford seeking help. The store clerk called the police. Defendant Paul Hodson, a New Bedford police officer, soon arrived. Defendant Hodson took Erick to the ground, sprayed him with pepper spray, handcuffed him, and then left him lying face down on the pavement. A store surveillance video shows Defendant Hodson, joined by the other Defendant police officers, casually standing

around as Erick struggled to breathe. The officers left Erick face down until his heart stopped

beating; they did not call for medical care until they learned that Erick had no pulse.

The circumstances of Erick's death became a matter of public interest well before Plaintiff

filed this lawsuit. After the New Bedford *Standard-Times* ran a series of articles about the incident in

August and September 2011,[1] the Bristol County District Attorney appointed a special prosecutor to

investigate possible criminal charges against the Defendants. At a press conference on January 17,

2012, the special prosecutor released a report of his investigation along with a detailed chronology of

events and the surveillance video. The release of the report and video generated additional media

coverage and prompted public statements from New Bedford Mayor Jon Mitchell and Police Chief

David Provencher assuring city residents that the officers responsible for Erick's death would be

held accountable.[2]

On February 4, 2012, Plaintiff's counsel sent a public records request to the New Bedford

Police Department seeking, *inter alia*, the complete internal investigation relating to Erick's death.

Defense counsel responded on behalf of the police department by providing more than 300 pages of

responsive documents. These public records included the Defendant officers' police reports,

detailed summaries of numerous witness interviews, an investigator's handwritten notes, and a

lengthy final report recommending discipline for the Defendants and concluding that Erick's death

was "an embarrassing disgrace to the New Bedford Police Department, and a case of absolute

---

[1] *See, e.g.*, Dan McDonald, "Mayor defends police in death of man while in custody," *The Standard-Times*, August 5, 2011 (attached as Exhibit A); Jack Spillane, "New Bedford's failure to communicate raises tough questions in police custody death," *The Standard-Times*, August 16, 2011 (attached as Exhibit B); Brian Fraga, "Family: Police chatted while man died," *The Standard-Times*, September 7, 2011 (attached as Exhibit C).

[2] *See* Brian Fraga, "Police won't be criminally charged in detainee's death," *The Standard-Times*, January 18, 2012 (attached as Exhibit D); Brian Fraga, "Erik Aguilar case file: Full statements of mayor, police chief and Aguilar's family," *SouthCoastToday.com Crime Watch Blog*, January 18, 2012 (attached as Exhibit E).

negligence on the part of the six police officers on scene, as well as their supervisor."[3] The only information redacted from these documents are Social Security Numbers and the names, addresses, and phone numbers of civilian witnesses.

After receiving the public records, Plaintiff filed this lawsuit on October 2, 2012. The parties began discovery soon after Defendants answered the complaint. On December 17, 2012, Plaintiff served the City of New Bedford with a subpoena seeking all documents relating to the internal investigation of Erick Aguilar's death; all documents relating to prior police contact with Erick Aguilar; relevant police department policies; and the complete personnel file for each Defendant. The only documents at issue here are those from the internal investigation of Erick's death.[4]

After Plaintiff served the subpoena, the parties negotiated the terms of a protective order, which was entered by this Court on January 17, 2013. *See* Docket #19 (order allowing motion for protective order). Two provisions of that order are particularly relevant here. First, ¶ 2 requires that confidentiality designations be made by "placing or affixing the words 'CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER' *on the document*." *See* Protective Order, Docket #15, Ex. 1 (emphasis added). Second, ¶ 3 requires that "[w]hen the confidential information . . . is contained in a portion of the document which can be separately identified, for example, a name, address or social security number, the portion of the document which is confidential shall be highlighted by the producing party. Only that portion will be subject to this order." *Id.*

On March 12, 2013, defense counsel responded to Plaintiff's subpoena on behalf of the City.[5] The response included several hundred pages of documents, none of which had been labeled

---

[3] *See* March 16, 2011, Report of Lieutenant Robert Aguiar (public version attached as Exhibit F), at 7.

[4] Plaintiff has no present objection to maintaining the confidentiality of each Defendants' personnel file.

[5] In addition to the individual Defendants, defense counsel also represented the City with respect to the public records request and the subpoena.

pursuant to ¶ 2. Instead, the City attempted to assert a blanket confidentiality designation by stating in a cover letter that "Defendants hereby designate all documents produced herein, excepting those produced in response to Request Nos. 3 and 4 [Erick's prior police contacts and New Bedford's policies and procedures] as Confidential, Subject to the Protective Order issued by the Court on January 17, 2013." *See* Non-Party City of New Bedford's Response to Plaintiff's Subpoena (attached to Defendants' motion as Docket #33, Ex. 5) at 1.

In response to Plaintiff's request for the complete investigatory file relating to Erick's death, the City provided the "New Bedford Police Department Division of Professional Standards Case File #1525 as well as recordings of witness interviews." *Id.* at 2. These documents, all designated in the City's cover letter as confidential, are virtually identical to those previously provided as public records. The two versions can be distinguished only by the fact that the City did not redact witness names and personal information from the documents provided in response to the subpoena.[6] In addition to these documents, the City also provided audio recordings of all witness interviews.[7] These recordings corresponded to the detailed summaries of each interview that had previously been provided as public records.

On May 7, 2013, Plaintiff's counsel wrote to defense counsel regarding Defendants' broad confidentiality designations, and to assert objections under ¶ 7(a) of the protective order. Among the issues raised in that letter were the fact that the "confidential" documents were already available as public records, that Defendants' failure to label any confidential documents would lead to confusion between the two sets of nearly identical documents, and that the City's use of the protective order

---

[6] Roughly 35 pages of the public records have redactions; the vast majority of the public documents are identical to the "confidential" version produced in response to the subpoena.

[7] The City also produced additional crime scene and autopsy photographs that had not previously been provided.

was an improper attempt to shield certain unfavorable information from public view.[8] Plaintiff

agreed to maintain as confidential any Social Security Numbers or medical records that appeared in

the investigatory file, but objected keeping the remainder of that file confidential. More specifically,

Plaintiff objects to the confidentiality designation as to all documents in the internal investigation

file, the audio recordings of witness interviews, and all documents relating to the outcome of the

City's disciplinary actions against Defendants. Plaintiff does not currently object to maintaining the

confidentiality of each Defendants' personnel file.

### DISCUSSION

The Court may issue a protective order only "for good cause shown." Fed. R. Civ. P. 26(c).

The party seeking entry or enforcement of a protective order bears the burden of establishing good

cause. *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988); *Miller v. City of Boston*, 549

F. Supp. 2d 140, 141 (D. Mass. 2008). Good cause requires a particular factual demonstration of the

harm that will occur without a protective order. *See Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir.

1986); *see also Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004) ("Broad allegations of harm,

unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.").

"If the proponent cannot establish good cause, 'the discovery materials in question should not

receive judicial protection.'" *Miller*, 549 F. Supp. 2d at 141 (quoting *Public Citizen*, 858 F.2d at 789).

Defendants have not met this burden. They do not identify any harm that would result from

disclosure of the complete internal investigation file. That is because there is no harm—virtually all

of the documents in question are already available as public records. Nevertheless, Defendants ask

the Court to ignore the existing public access, arguing that the prior release of this information is

"irrelevant" because "the City's response to the public records request was not within the confines

---

[8] A copy of the letter is attached Defendants' motion as Exhibit 6.

of the Federal Rules of Civil Procedure but rather the Massachusetts Public Records Law." Defs.'
Mot. at 5.

This argument ignores reality. The Federal Rules are not a tool for Defendants to put the
genie back in the bottle and should not be used to shield matters of public interest from public
scrutiny. This is especially true in federal civil rights litigation. *See ACLU of Massachusetts v. Sebelius*,
2011 WL 4744982, at *1 (D. Mass. Oct. 6, 2011) (noting in civil rights context that "[t]he First
Amendment militates against overly broad confidentiality designations"); *cf. Williams v. City of Boston*,
213 F.R.D. 99, 102 (D. Mass. 2003) (broad assertions of privilege in civil rights cases "offend[] basic
notions of openness and public confidence in our system of justice"). Far from being "irrelevant,"
the City's prior disclosure of these records underscores why there is no reason to treat this
information as confidential. *See, e.g., Cooper v. Internal Revenue Serv.*, 450 F. Supp. 752, 755 (D.D.C.
1977) ("Because IRS released these documents, and since they became part of the public record, it
cannot be reasonably said that the IRS has a genuine interest in maintaining the confidentiality of
these documents.").

In addition to asking the Court to ignore the existing public access to this information,
Defendants offer two rationales for continued confidentiality. First, they suggest that good cause
exists because public disclosure "violates the core principle of the Protective Order." *See* Defs.' Mot.
at 5. This argument does not provide the "particular factual demonstration of potential harm"
necessary for a showing of good cause, *Anderson*, 805 F.2d at 7, and fails to account for the public
interest at stake.[9] *See Wiggins v. Burge*, 173 F.R.D. 226, 230 (N.D. Ill. 1997) ("The public has a right to
know how matters concerning their daily protection are being investigated and handled."); *King v.*

---

[9] This argument also misconstrues the "core principle of the Protective Order." The order
contemplates limited confidentiality designations to protect truly confidential information. *See*
Protective Order at ¶ 3 (requiring that designations be made for specific, identifiable confidential
information and not for the entire document containing that information). The protective order was
not drafted to permit conducting discovery in secret.

*Conde*, 121 F.R.D. 180, 190 (E.D.N.Y. 1988) ("Lawfulness of police operations is a matter of great

concern to citizens in a democracy and protective orders must not be granted without that public

interest in mind."); *cf. Globe Newspaper Co. v. Police Comm'r of Boston*, 419 Mass. 852, 860 (1995) ("The

public interest in knowing whether [a highly publicized internal investigation was] conducted in a

thorough and honest manner outweighs any invasion of privacy resulting from the full disclosure"

of the investigatory file).

Defendants' reference to the "core principle of the Protective Order" also fails to recognize

that broad confidentiality designations place unnecessary burdens on Plaintiff's ability to use these

documents at trial and in his pleadings.[10] *See* Protective Order at ¶¶ 6 and 9 (restrictions for filing

confidential materials in court and using those materials at trial); *Hawley v. Hall*, 131 F.R.D. 578, 585

(D. Nev. 1990) ("The public interest in the conduct of public officials . . . outweighs the minimal

harms tendered by the defendants as good cause in this case. The comprehensive protective order

sought by the defendants would by its nature be overinclusive and would undoubtedly be subject to

further litigation and modification."). Because of these restrictions, the protective order should be

used only to protect truly confidential information and not to shield this case from public scrutiny.

Defendants' second, one-sentence argument states that confidentiality is necessary to avoid

"disclosure of the names of involved witnesses, some involuntary, whom internal affairs interviewed

as part of the City's internal investigation." These individuals, many of whom Defendants identified

in their Rule 26(a) initial disclosures, are percipient witnesses to the events at issue in this case. They

will be deposed and eventually may testify at trial in open court. They are not confidential

informants and there is no claim that any witness was told that their recorded statement would

---

[10] Defendants' failure to comply with ¶ 2 of the protective order, requiring that confidential documents be labeled as such, will also lead to confusion and unnecessary motion practice in this case because Plaintiff is entitled to disclose information obtained outside of the discovery process, *see Anderson*, 805 F.2d at 7, but there is no obvious way to distinguish many of the "confidential" documents from the identical public ones.

remain confidential. The fact that police officers interviewed witnesses at some earlier point in time does not somehow make their identities a secret.

Defendants fail to identify any harm that could result from public disclosure of witness names and the audio recordings of their interviews, and ignore that the content of those interviews has already been disclosed in the detailed summaries provided as public records. *See Globe Newspaper Co.,* 419 Mass. at 863 ("Considering the extensive amount of prior disclosure, the judge could properly conclude that the incremental effect of revealing the citizen witness statements would not unduly restrain citizen participation in future criminal investigations. Indeed, in a case like this, which has generated considerable negative publicity, such disclosure may help to restore public confidence in a police department which has been highly criticized for its handling of a sensitive case.").

## CONCLUSION

Defendants have not established good cause to maintain the confidentiality of the internal investigation file relating to Erick Aguilar's death. Virtually all documents and information in this file are already publicly available. For the foregoing reasons, the Court should deny Defendants' motion to enforce the protective order and order that only medical records, Social Security Numbers, phone numbers and full addresses contained in the investigatory file be subject to the protective order.

RESPECTFULLY SUBMITTED

For the Plaintiff,
By his attorneys,

/s/ Howard Friedman
Howard Friedman, BBO #180080
David Milton, BBO #668908
Drew Glassroth, BBO #681725
**Law Offices of Howard Friedman, PC**
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
(617) 742-4100
hfriedman@civil-rights-law.com
dmilton@civil-rights-law.com
dglassroth@civil-rights-law.com

Dated: June 6, 2013

**CERTIFICATE OF SERVICE**

I certify that on this day I caused a true copy of the
above document to be served upon the attorney of
record for all parties via CM/ECF.

Date: June 6, 2013        /s/ Howard Friedman
                          Howard Friedman