

# NEW BEDFORD POLICE DEPARTMENT

# DIVISION OF PROFESSIONAL STANDARDS

## CASE # **1525**

**In Custody/Sudden Death**

*Complaint Filed by: Ronald E. Teachman*

*Case Investigated by:* **Detective Sergeant Kristofer R. Winterson #3582**

*NEW BEDFORD POLICE DEPARTMENT*
*DIVISION OF PROFESSIONAL STANDARDS*

To:         Chief Ronald E. Teachman

From;       Lieutenant Robert Aguiar

Subject:    Case # 1525

Date:       March 16, 2011

---

Sir; I have had the opportunity to review the materials associated with complaint #1525. This complaint investigation was conducted by Sergeant Kristofer Winterson, and was initiated following the in-custody death of Erik Aguilar DOB-09/16/1967, at the Mobil gas station located at 367 Ashley Boulevard in New Bedford on July 22, 2010. The events preceding the death of Erik Aguilar were captured by security cameras affixed inside as well as to the exterior front of the Mobil gas station building.

It should be noted that the video footage obtained from the Mobil gas station was referenced repeatedly throughout this investigation. I would submit that the video footage that covers the front parking lot of the Mobil gas station is very damaging toward the police officers who arrived and remained on scene throughout this event.

Although there is no indication of police misconduct on the part of any New Bedford police officer while Erik Aguilar was initially taken into custody, what happened, or more importantly, what did not happen following his being handcuffed and pepper sprayed is alarming. The video footage is enclosed with this complaint investigation package for your review.

On July 22, 2010, at approximately 4:17am, Erik Aguilar entered the Mobil gas station, told the clerk that he needed help, and asked that the police be called. The gas station clerk, ████████, subsequently called 911 and a short time later Officer Paul Hodson arrived on scene.

Just prior to the arrival of Officer Hodson, Erik Aguilar can be seen on the video footage exiting the gas station building and walking away, southeast through the parking lot. The store clerk then exits the building moments later, holding a cordless phone to his ear, and is presumably on the telephone with the police department. It appears at this point that the store clerk is watching Erik Aguilar walk away and is providing his direction of travel to the calltaker.

At this same time, the store clerk observes Officer Hodson arriving on scene and points in the direction of Erik Aguilar. Officer Hodson can then be seen pulling into the parking lot and parking near the building entrance. As Officer Hodson parks his cruiser, Erik Aguilar returns to the Mobil gas station and approaches the open driver's window of Officer Hodson's cruiser, then immediately turns his back to Officer Hodson and appears to speak to the store clerk.

Erik Aguilar then turns back toward Officer Hodson at which time Officer Hodson exits his cruiser and appears to engage in conversation with Erik Aguilar. During this time, Officer Hodson shines his flashlight toward the face of Erik Aguilar, then leans forward and appears to be checking the contents of the right front pants pocket of Aguilar.

1

At this point, Officer Hodson made the decision to place Erik Aguilar in handcuffs and grabbed his right arm, at which time Erik Aguilar begins to resist Officer Hodson's efforts, but he is quickly maneuvered to the driver's side front of the cruiser where it appears as though he is going to comply with handcuffing. As Officer Hodson attempts to place handcuffs on Erik Aguilar, he begins to resist again. A struggle then ensues at the driver's side front of the cruiser, during which time Erik Aguilar is directed to the ground, on his back, toward the driver's door of the cruiser.

While on the ground, Officer Hodson can be seen administering pepper spray to the facial area of Erik Aguilar, and with the assistance of a Good Samaritan, identified as ▬▬▬▬▬▬ was able to roll Erik Aguilar onto his stomach and handcuff him. According to the gas station video footage, Erik Aguilar was handcuffed at 04:28:01. Once handcuffed, Officer Hodson and the Good Samaritan,▬▬▬▬▬▬ hold Erik Aguilar face down on the pavement as he moves his legs and upper body. At 04:29:32 it appears as though Erik Aguilar stops moving entirely.

During this time, Officer Hodson placed a radio transmission requesting that additional assistance, as well as the prisoner transport van be sent to his location. Communications dispatched additional cruisers and called over the air for the prisoner transport van. Officer Hodson then placed a second radio transmission to dispatch requesting that the prisoner transport van expedite to his location, as Erik Aguilar is out of control. I would suggest that at this particular time, Erik Aguilar is not "out of control" but reacting to the effects of the pepper-spray.

The prisoner transport van is then called for a second time over the air, and it is subsequently discovered that the prisoner transport van operator had left work due to illness, and that the van was currently unmanned. It should be noted that the city was over minimum staffing requirements with an extra officer assigned to unit thirteen.

At this time, Sergeant Francisco Rodrigues, the commanding officer for the city, contacted communications by telephone and attempted to arrange staffing for the prisoner transport van. Sergeant Rodrigues ordered that unit thirteen be dispatched to PD-1, where the van was currently parked, and Officer Abraham Nazario, the observer from unit thirteen, pick up the prisoner transport van and drive it to the Mobil gas station in the north-end of the city where units were requesting its expedited presence.

However, at this particular time, unit thirteen was assigned to a call for service on Fairmount Street in the far west-end of the city. As a result, Sergeant Francisco Rodrigues ordered that any available center area unit be dispatched to unit thirteen's location, in the far west-end of the city, to pick up Officer Abraham Nazario and transport him to the downtown station where he was to pick up the prisoner transport van and drive it to Ashley Boulevard and Nash Road in the north end, where officers were calling for it's expedited presence.

At this point in time, it would have been just as time consuming and/or time efficient for an officer to leave the scene at the Mobil gas station in the north-end of the city, drive to the downtown police station and pick up the prisoner transport van, and drive it back to the Mobil service station.

In any event, by the time the prisoner transport van was made available for service, the north-end officers cancelled their request for the van and requested that the medics be dispatched to their location instead.

2

While the above arrangements were being made to staff the prisoner transport van, the following was also occurring based on the video footage;

At 04:29:50 Officer Antonio Almeida arrives on scene, exits his cruiser and approaches Officer Hodson, Good Samaritan ▓▓▓▓▓▓ and Erik Aguilar, who is still face-down on the pavement, handcuffed behind his back, having been pepper sprayed.  Officer Antonio Almeida appears to assess the situation and engages in conversation with Officer Hodson.

At 04:31:10 Officer Roberto DaCunha and Officer Damien Vasconcelos arrive on scene, park behind Officer Hodson's cruiser and approach the area where Erik Aguilar is laid out. At the same time, Officer Keith Almeida arrives on scene and walks into the video footage from the south.

At 04:31:35 Good Samaritan ▓▓▓▓▓▓ walks to his vehicle and drives off, while Officer Steven Wadman walks into the camera footage from the south followed moments later by his partner Officer Steven Almeida.

At 04:31:51 Officer Roberto DaCunha shines his flashlight into the face of Erik Aguilar as Officer Antonio Almeida leans over and appears to look at the face of Erik Aguilar. At this particular moment, there are seven police officers, with a combined street experience in excess of seventy years, standing in a circle around Eric Aguilar, who is still handcuffed behind his back, face-down on the pavement, having been pepper-sprayed, and who appears to not have moved since 04:29:32.

At this point I would like to draw your attention to two things. First, is Officer Keith Almeida. At 04:32:27, Officer Keith Almeida appears on the video footage, the officer furthest to the right with his back to the camera and his left hand on his hip. Disturbingly, Officer Keith Almeida does not do much more that he is doing at this particular moment, throughout the entire episode that follows.  Second, and I believe to be far more important, is the absence of north-end patrol supervisor Lieutenant Michael Jesus, both on scene and on the air.

At 04:32:30 Officer Steven Wadman walks south out of the video footage, followed by Officer Steven Almeida approximately thirty seconds later.  These officers left the Mobil gas station to respond to a call for service, and then proceeded to the city yard for fuel.

Officer Steven Wadman and Officer Steven Almeida were on scene for a total of approximately seventy five seconds. As a result, Sergeant Winterson has concluded that these two officers were not present on scene for a sufficient period of time to form an opinion as to Erik Aguilar's physical or medical condition, and should be exonerated of any wrong doing. I reluctantly agree with this conclusion.

At 04:33:00 Officer Paul Hodson, Officer Antonio Almeida, Officer Keith Almeida, Officer Roberto DaCunha and Officer Damien Vasconcelos remain on scene, standing in a loose circle around Erik Aguilar, who is still handcuffed behind his back, face-down on the pavement, having been pepper sprayed five minutes earlier, and who is still not moving.

It cannot be proven if Officer Hodson advised the officers present at the scene that he had administered pepper spray to Erik Aguilar during their struggle. The officers involved in this incident did not provide statements during their Division of Professional Standards administrative interviews relative to this internal investigation, and it does not appear that the subject was raised during questioning by Massachusetts State Police detectives.

3

Nevertheless, knowledge of the administration of pepper-spray notwithstanding, Erik Aguilar is still handcuffed behind his back, face down on the pavement and not moving, with six police officers standing around him, and has been since 04:29:32.

At 04:33:30 Officer Paul Hodson who had been kneeling alongside Erik Aguilar with a hand on his back, now stands up, which I would suggest is a clear indication that he was no longer sensing any type of resistance from Erik Aguilar. I would further submit that there have been no visible signs of resistance on the part of Erik Aguilar beginning at 04:29:32, when his body stops moving.

For your information, on the video surveillance footage at 04:36:20, Officer Antonio Almeida is standing at the driver's side rear door of the police cruiser. Moving clockwise from Officer Antonio Almeida is Officer Keith Almeida, Officer Damien Vasconcelos, Officer Roberto DaCunha and Officer Paul Hodson.

I would also like to direct your attention to another fact at this time. At 04:36:25, you will notice a fist-bump occur between Officer Antonio Almeida and Officer Paul Hodson during or following a brief conversation. Because the officers did not submit to questioning during their administrative interviews, I was unable to inquire as to the reason for this act. I would however like to point out that during this fist-bump, Erik Aguilar is still handcuffed behind his back, face down on the pavement, having been pepper-sprayed, and at this point has been in this position since 04:28:01, a total of eight minutes and twenty four seconds.

At 04:36:39, Officer John Martins walks into the video footage from the south.

At 04:37:34 Officer Martins walks closer to Erik Aguilar and it appears as though the officers begin to finally assess his condition. Officer Almeida looks down at Erik Aguilar as does Officer Hodson, while Officer DaCunha illuminates the face of Erik Aguilar with his flashlight.

At 04:38:40, it appears as though the officers are finally sensing that something is wrong with Erik Aguilar. Officer Hodson can be seen speaking into his radio while Officer Vasconcelos walks to his cruiser and opens the trunk, but for an unknown reason Officer Vasconcelos returns from his cruiser empty handed. While this is occurring, Officer John Martins approaches Eric Aguilar, crouches down by his head and appears to be conducting a closer examination of his condition.

Following the closer examination of Erik Aguilar by Officer Martins, both he and Officer Vasconcelos return to Officer Vasconcelos' cruiser and again the trunk is opened. The officers then return from the cruiser empty-handed. I would like to point out the lack of urgency in the movements of Officer Damien Vasconcelos and Officer John Martins, and the fact that it is now 04:40:30 and Erik Aguilar is still handcuffed behind his back, face down on the pavement, having been pepper-sprayed, and has been in this same position without moving since 04:29:32, a total of ten minutes and fifty eight seconds.

At 04:40:40, Officer Hodson walks to and opens his cruiser trunk, and at 04:40:50, the officers begin donning protective gloves, with the exception of Officer Keith Almeida, who is standing with his back to the camera with his hands in his pockets.

It is also important to note the continued absence of north-end street supervisor Lieutenant Michael Jesus, either on scene or on the air, up to this point. This incident has now been developing, in the district for which he is responsible, since Officer Hodson arrived on scene at 04:23:00, a total elapsed time of seventeen minutes and forty seconds.

During this time, there had been several excited calls over the radio by Officer Hodson, including a request for back-up assistance and the prisoner transport van, followed by a request for the prisoner transport van to be expedited to his location. Not to mention an obvious blunder transpiring over the radio, relative to the location and the lack of staffing for the prisoner transport van.

The audio recordings of both radio and telephone transmissions relating to this incident have been obtained, and are included with this package for your review.

At 04:39:17 police dispatcher Ronald Pacheco placed a recorded telephone call to PD-3, during which time he spoke with the desk officer Luis Sud-Martinez. Dispatcher Pacheco asked for Lieutenant Michael Jesus and was informed by Officer Sud-Martinez that Lieutenant Jesus was on the road.

How Lieutenant Jesus could be on the road, and not know that an incident of this magnitude is occurring in the city for as long as it has, never-mind in the district for which he is responsible, is a mystery. As noted earlier, Lieutenant Jesus declined to provide a statement during his administrative interview regarding this incident.

At 04:41:12, Officer Antonio Almeida and Officer Damien Vasconcelos finally move Erik Aguilar from his face-down position, by lifting his upper body and attempting to place him into a kneeling position. At this point, Erik Aguilar's body is limp and his head falls forward. Officer Martins then kneels in front of Erik Aguilar and examines his face. By this point, Erik Aguilar had been handcuffed behind his back, face-down on the pavement, having been pepper-sprayed for a total of exactly thirteen minutes and eleven seconds.

At 04:41:20 Officer Hodson closes the trunk of his cruiser and returns empty-handed.

At 04:41:54 the officers huddle over the limp body of Erik Aguilar and appear to have some type of conversation.

At 04:42:02 Officer Vasconcelos appears to visually scan the front roof line of the Mobil gas station and then at 04:42:03, he turns and looks directly toward the surveillance camera.

At 04:42:20 the officers remove the handcuffs from the clearly limp body of Erik Aguilar, lay him on his back, and prepare to perform emergency medical care, and at 04:43:09, Officer John Martins begins performing chest compressions on Erik Aguilar as other officers prepare the AED, which is ultimately retrieved from the trunk of Officer Hodson's cruiser.

Between 04:43:09 and 04:51:42, the officers on scene, with the exception of Officer Keith Almeida, intermittently perform chest compressions, rescue breathing, or take some other action to support the administration of emergency medical care for Erik Aguilar. I will note that I am shocked by the inaction of Officer Keith Almeida during this time period, and would suggest this to be egregious behavior.

Not only did Officer Keith Almeida fail to assist Erik Aguilar, who was clearly in distress, he also failed to assist his fellow officers with the administration of medical care for Erik Aguilar. I would suggest that it is evident that Officer Keith Almeida had absolutely no intention of assisting in any fashion, as he did not even bother to don protective gloves.

At 04:51:42 the ambulance arrives on scene, and moments later, the ambulance personnel request that the New Bedford Fire Department be dispatched to the scene for assistance.

At 04:54:05 Erik Aguilar's body is placed onto a stretcher then wheeled toward the rear of the ambulance and out of the video footage.

At 04:58:28 Lieutenant Michael Jesus arrives on scene, and can be seen walking into the video footage and into the service station building and then leaving the building at 05:00:20.

At 05:11:40 the ambulance leaves the scene with Erik Aguilar enroute to Saint Luke's Hospital.

At 05:29:00 Erik Aguilar is pronounced dead at Saint Luke's Hospital.

The cause of death noted on the Certificate of Death of Erik Aguilar is;

Immediate Cause; Probable cardiac arrhythmia

Due to; acute intoxication due to combined effects of cocaine and ethanol, in the setting of police restraint.

A report was generated from the digitally stored information contained within the AED that was utilized on Erik Aguilar. According to this printed report, once the AED pads were affixed to the body of Erik Aguilar, the AED performed an initial ECG. As a result of the ECG, the AED registered a flat-line and indicated "no shock advised"

The rhythms that are displayed on the printed report are indicators of the chest compressions being performed by officers on the scene, followed by periodic segments of flat-line, indicating that chest compressions were stopped as rescue breaths were administered.

The AED report is included in this package for your review. I would suggest that the fact that the initial ECG registered a flat line is a clear indicator of the dismal condition that Erik Aguilar was in, while handcuffed face-down on the pavement, for over thirteen minutes.

Based upon my review of the materials associated with this incident, I would classify this event as a tragedy for the family of Erik Aguilar, an embarrassing disgrace to the New Bedford Police Department, and a case of absolute negligence on the part of the six police officers on scene, as well as their supervisor Lieutenant Michael Jesus.

What occurs on the video footage, and far more importantly what does not occur on the video footage, is in direct conflict with our mission as police officers and a police department. The six police officers on scene had the training, the duty, and the obligation as police officers to help and protect Erik Aguilar, and they undeniably failed to do so.

Lieutenant Jesus had several duties and responsibilities as well. Why did Lieutenant Jesus not respond to the scene immediately when one of his officers was calling for assistance, and why did Lieutenant Jesus not intervene or interject over the radio when his officers were calling for the prisoner transport van, expedited to their location, and it was unavailable?

This incident was occurring in the heart of the district for which Lieutenant Jesus was responsible. These were the fundamental obligations of Lieutenant Jesus as the north-end street supervisor, which he undoubtedly failed to perform. His absence on scene and his silence on the radio are both intolerable and inexcusable.

With that said, I agree with the conclusions reached and the recommendations suggested by Sergeant Kristofer Winterson, and have included additional recommendations as well:

Recommendation for **SUSTAINED** findings against **Lieutenant Michael Jesus** for violating the following New Bedford Police Department Rules and Regulations;

**Rule 501.12 Aiding Other Members**; a member shall assist and protect, and come to the aid of other members of the department who in the exercise of their duties are in need of aid and assistance.

**Rule 515.6 (b) Failure to perform according to department rules and regulations**
**Rule 515.6 (l) Improperly performing or neglecting to perform the duties assigned**
**Rule 515.6 (r) Neglect of Duty**

**Rule 602.3 The platoon lieutenant shall provide proper supervision to those officers under his command**

**General Order 4-11 Dispatch Protocols for Patrol Supervisors** which states in part:

"they shall monitor and ensure that resources are being used effectively, officers are responding in a timely fashion and a proper number of patrol officers are being sent to service calls"

And;

"Supervisors shall be familiar with and adhere to all department policies and procedures requiring an immediate response or intervention. In addition, whenever a serious crime or incident is reported within their assigned area, the patrol supervisor shall immediately proceed to the scene, take command if necessary, and supervise the officers to ensure that all department procedures are being carried out."

Recommendation for **SUSTAINED** findings against **Officer Paul Hodson** for violating the following New Bedford Police Department Rules and Regulations;

**Rule 501.13 Custody of Prisoners**; any member who has, at any time, the custody of any person or persons under arrest or detention shall be responsible for the proper safeguard of such person or persons and their property for the period of time they remain in his custody. Any abusive words or actions against such person or persons shall subject the officer to disciplinary action.

7

Rule 515.6 (b) Failure to perform according to department rules and regulations
Rule 515.6 (l) Improperly performing or neglecting to perform the duties assigned
Rule 515.6 (r) Neglect of Duty

**General Order 12-02 Use of Less Lethal Force** which states in part;

"Persons who have been subjected to chemical weapons shall, as soon as practical and when safe to do so, be afforded a means of cleansing the chemical agent from the eyes and/or skin with cool water to lessen the discomfort. The affected person should be removed from the area of exposure and into fresh air. If aggravated symptoms persist, medical attention shall be afforded the subject."

And;

"Officers will ensure when transporting prisoners who have been subjected to chemical weapons that the prisoner is not placed in a prone position and stays upright with a clear airway to avoid possible positional asphyxia. Officers must be especially careful when restraining combative subjects following the use of chemical weapons."

And;

"Officers should consider allowing EMS to transport prisoners for immediate medical attention when circumstances permit".

Recommendation for **SUSTAINED** findings against **Officer Keith Almeida** for violating the following New Bedford Police Department Rules and Regulations;

**Rule 501.13 Custody of Prisoners**; any member who has, at any time, the custody of any person or persons under arrest or detention shall be responsible for the proper safeguard of such person or persons and their property for the period of time they remain in his custody. Any abusive words or actions against such person or persons shall subject the officer to disciplinary action.

**Rule 501.12 Aiding Other Members**; a member shall assist and protect, and come to the aid of other members of the department who in the exercise of their duties are in need of aid and assistance.

**Rule 515.6 (b) Failure to perform according to department rules and regulations**
**Rule 515.6 (l) Improperly performing or neglecting to perform the duties assigned**
**Rule 515.6 (r) Neglect of Duty**

Recommendation for **SUSTAINED** findings against **Officer Antonio Almeida** for violating the following New Bedford Police Department Rules and Regulations;

**Rule 501.13 Custody of Prisoners**; any member who has, at any time, the custody of any person or persons under arrest or detention shall be responsible for the proper safeguard of such person or persons and their property for the period of time they remain in his custody. Any abusive words or actions against such person or persons shall subject the officer to disciplinary action.

**Rule 515.6 (b) Failure to perform according to department rules and regulations**
**Rule 515.6 (l) Improperly performing or neglecting to perform the duties assigned**
**Rule 515.6 (r) Neglect of Duty**

      Recommendation for <u>**SUSTAINED**</u> findings against <u>**Officer Roberto DaCunha**</u> for violating the following New Bedford Police Department Rules and Regulations;

**Rule 501.13 Custody of Prisoners**; any member who has, at any time, the custody of any person or persons under arrest or detention shall be responsible for the proper safeguard of such person or persons and their property for the period of time they remain in his custody. Any abusive words or actions against such person or persons shall subject the officer to disciplinary action.

**Rule 515.6 (b) Failure to perform according to department rules and regulations**
**Rule 515.6 (l) Improperly performing or neglecting to perform the duties assigned**
**Rule 515.6 (r) Neglect of Duty**

      Recommendation for <u>**SUSTAINED**</u> findings against <u>**Officer Damien Vasconcelos**</u> for violating the following New Bedford Police Department Rules and Regulations;

**Rule 501.13 Custody of Prisoners**; any member who has, at any time, the custody of any person or persons under arrest or detention shall be responsible for the proper safeguard of such person or persons and their property for the period of time they remain in his custody. Any abusive words or actions against such person or persons shall subject the officer to disciplinary action.

**Rule 515.6 (b) Failure to perform according to department rules and regulations**
**Rule 515.6 (l) Improperly performing or neglecting to perform the duties assigned**
**Rule 515.6 (r) Neglect of Duty**

      Recommendation for <u>**SUSTAINED**</u> findings against <u>**Officer John Martins**</u> for violating the following New Bedford Police Department Rules and Regulations;

**Rule 501.13 Custody of Prisoners;** any member who has, at any time, the custody of any person or persons under arrest or detention shall be responsible for the proper safeguard of such person or persons and their property for the period of time they remain in his custody. Any abusive words or actions against such person or persons shall subject the officer to disciplinary action.

**Rule 515.6 (b) Failure to perform according to department rules and regulations**
**Rule 515.6 (l) Improperly performing or neglecting to perform the duties assigned**
**Rule 515.6 (r) Neglect of Duty**

Lieutenant Robert Aguiar

Division of Professional Standards

Reviewed/accepted

Chief of Police   _____        Date _____

Deputy Chief of Police   _____        Date _____